UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE BURLINGTON INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>vs.<br><br>CHWC, INC. dba CRAZY HORSE RESTAURANT AND NIGHTCLUB; and RUDY MARTINEZ, JR.,<br><br>    Defendants. | CASE NO. CV 11-02926 R (FFMx)<br><br>STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW |
| RUDY MARTINEZ, JR.,<br><br>    Counterclaimant,<br><br>vs.<br><br>THE BURLINGTON INSURANCE COMPANY,<br><br>    Counterdefendant. | |

# I. MOTION PRESENTED

Plaintiff The Burlington Insurance Company ("Burlington") filed a motion for summary judgment against defendant Rudy Martinez, Jr. ("Martinez") which Martinez opposed. The court conducted a hearing on December 19, 2011. Counsel for Burlington and Martinez appeared.

# II. UNCONTROVERTED FACTS

## A. The Insurance Policy

Burlington insured defendant CHWC, Inc. dba Crazy Horse Steak House and Saloon ("Crazy Horse") through a Commercial General Liability insurance policy which provides that Burlington "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' … to which this insurance applies." By endorsement, the Policy contains an Assault or Battery Exclusion, which provides that the Policy does not apply to bodily injury "[a]rising out of assault or battery, or out of any act or omission in connection with the prevention or suppression of an assault or battery."

## B. The Tort Lawsuit Against the Insured

Mr. Martinez filed a lawsuit against Crazy Horse in state court. The Complaint alleged that Crazy Horse is "a restaurant, bar, and nightclub … which touts its 'wild and crazy nightlife' on its website." (Complaint, ¶ 4.) It alleged that Crazy Horse's "security employees, and other employees, routinely used excessive force and engaged patrons physically, handcuffed patrons, beat patrons, forced patrons to the ground, and generally physically abused patrons, causing injuries." (*Id.*, ¶ 7.) The complaint listed seventeen such events in the seventeen months before Martinez was injured. (*Id.*) The Complaint further alleged that on the night of January 19, 2008, Martinez was a patron when Crazy Horse's security employees "physically removed him from the dance floor and thereafter struck him on his torso, head and face with closed fists, feet and flashlight(s) while plaintiff was handcuffed on the floor, injuring plaintiff." (*Id.*, ¶ 5.) Based on these allegations,

the Complaint alleged causes of action for assault, battery, negligence, negligent hiring, and premises liability. Each incorporated by reference the general allegations set forth above.

The assault claim further alleged that the security employees "intimidated and harassed" Martinez and acted with the intent to cause him "apprehension of a harmful or offensive contact with his person" and that he "did in fact experience apprehension of a harmful and offensive contact." (Complaint, ¶¶ 9, 10.) Both the assault and the battery claims further alleged that the security employees' "conduct in tackling and beating the Plaintiff" was done with the intent to cause great bodily harm." (*Id.*, ¶¶ 14, 19.)

The negligence claim further alleged that Crazy Horse "breached a duty owed to Plaintiff by failing to provide a safe environment, … by failing to properly hire, train, and supervise its employees and by failing to prevent their employees from tackling and beating and battering plaintiff, more specifically beating and causing unconsciousness, head/brain trauma." (Complaint, ¶ 23.) It added that Crazy Horse negligently owned, maintained and controlled its nightclub and acted "in such a way as to cause damages to [Mr. Martinez] and allowed its employees to act in a way as to permit them to physically assault and batter their own business patrons." (*Id.*, ¶¶ 24-25.)

The negligent hiring claim further alleged that Martinez "was tackled, brutally beaten and injured" by Crazy Horse security employees. (Complaint, ¶ 29.) It further alleged that defendants "knew of the need for properly trained employees and knew that the lives and health of their patrons were at risk if they improperly employed and/or inadequately or improperly trained employees, unsupervised employees, employees that routinely used excessive and improper force and violence used to inflict bodily harm and/or employees prone to unprovoked demonstrations of violence." (*Id.*, ¶ 30.)

The premises liability claim further alleged that Crazy Horse had a manager

1   or supervisor with a duty "to maintain a secure environment against foreseeable
2   criminal acts at the subject premises, particularly reasonably foreseeable criminal
3   acts, such as assault and battery, on the part of defendant's own employees."
4   (Complaint, ¶ 33.)  It further alleged that Crazy Horse had a duty to keep its
5   premises "safe from the criminal and dangerous activities of the employees" of the
6   club.  (*Id.*, ¶ 35.)
7         The premises liability claim further alleged that on January 19, 2008, Crazy
8   Horse employed security employees "who were trained, encouraged, and/or
9   allowed to use unnecessary and excessive force that would cause great bodily
10  harm" and who "had a known propensity for violence and, in fact, became violent
11  on January 19, 2008, and inflicted serious injuries to [Martinez] without
12  provocation or necessity."  (*Id.*, ¶ 36.)  Finally, it alleged that defendants
13  "negligently managed and controlled their employees so as to allow [Martinez] to
14  be tackled, beaten, restrained, and seriously injured … by the employees of the
15  Crazy Horse Restaurant."  (*Id.*, ¶ 37.)
16        The West Covina Police Department's Crime Report ("Crime Report") was
17  provided to Burlington with the Martinez Complaint.  It identifies the crimes
18  committed against Mr. Martinez as "battery" and "battery with serious bodily
19  injury" and cites Penal Code sections 242 (battery-defined) and 243 (battery-
20  punishment).  It identifies the actions of "the suspect" as "struck victim." Its
21  synopsis states that Martinez was "struck several times" and "placed in critical
22  condition."
23        The Crime Report's narrative summarized that Martinez "was getting kicked
24  out" of the Crazy Horse "when a fight broke out" and he was struck several times
25  before being restrained.  Crazy Horse security officers told police that they were
26  removing Mr. Martinez from the premises, the Martinez family had protested, and
27  the incident escalated into a fight.  Security "had to physically restrain Martinez and
28  took him to the ground in doing so."  The Crime Report further stated that Mr.

- 3 -

Martinez's sister went to the police station the next morning and reported that Mr. Martinez had been "assaulted" by the security team. She said that as she was dancing, security guards "swarmed" her brother and started to push him outside. When she protested, a "female security member pushed her outside," where she saw Martinez "being struck repeatedly with closed fists to the face and body."

The police wrote two supplemental reports after interviewing more security guards and on the night of the brawl, the security officers also wrote incident reports which were made a part of the police crime report. Read together, the reports are consistent and tell how, while dancing, Mr. Martinez frightened a woman who did not know him with "an assaulting gesture." She was afraid and looked to a guard for help. The guard called for assistance and several guards acted to remove Mr. Martinez to prevent any further incidents. In attempting to do so, the guards were battered by a female from Martinez's group who became hostile and "began to claw and grab" at them. One security officer had to struggle to remove Mr. Martinez as the female "grabbed him … in an apparent effort to keep him from removing [Martinez] from the bar." A female security officer came to help. As she stepped between the woman and the other officer, the woman "began to claw at [her] arms." When a third security officer arrived, he found a man and a woman in an argument. As he helped take Mr. Martinez out, Martinez was increasingly argumentative, very hostile, and resisted removal. Other family members followed and became argumentative.

As Mr. Martinez moved toward the exit, he increased his defiance. At the exit, Mr. Martinez continued to resist removal, and in so doing backed up toward a vacant stool and fell. Before the security officer with him could even react, he found the guards outnumbered in a scuffle with the Martinez family and friends, which the police described as "mutual combat." Two officers each saw Mr. Martinez get up from his fall and move to attack an officer. To stop him, an officer grabbed Martinez "in a bear hug style grip and took him to the ground."

Burlington denied a duty to defend Martinez in the state court action. Its denial letter stated that the allegations of the complaint, including those for negligence, "clearly stem from 'assault or battery' and acts [or] omissions in connection with the prevention or suppression of the assault or battery, which is the basis of Martinez' injuries and damages." Thus, it stated that coverage was excluded by the Assault or Battery Exclusion.

Martinez later filed a First Amended Complaint ("FAC") against Crazy Horse that was never provided to Burlington. The only substantive change was that the specific causes of action for assault and battery were dropped. All factual allegations remained. Martinez still alleged that he "was tackled, brutally beaten and injured by the security employees of Defendants." (FAC, ¶ 17.) And each cause of action was specifically based on Crazy Horse having "improperly hired, trained, and retained security employees who were trained, encouraged, and/or allowed to use unnecessary and excessive force that would cause great bodily harm" and that they "became violent on January 19, 2008, and inflicted serious injuries to [Martinez] without provocation or necessity." (*Id.*, ¶ 24.) It further alleged that Crazy Horse "negligently managed and controlled their employees so as to allow [its] patrons … to be tackled, beaten, restrained, and seriously injured … by the employees of CHWC/Crazy Horse." (*Id.*, ¶ 25.)

A bench trial was conducted in the state court. The Crime Report was admitted for all purposes including the truth of the matters asserted. Mr. Martinez also testified that he remembered the security people dragging him across the dance floor and beating him with their fists. No other evidence was presented to show how Mr. Martinez was injured. Plaintiff's expert on security opined that the club's security procedures failed to meet proper standards and that the "absence of training, negligence in training, and the tactics that were employed were directly related to the injuries to Mr. Martinez."

In its decision, the court found that Crazy Horse was negligent in the hiring,

- 5 -

supervision, and training of its security guards, and that its security guards were "negligent in the manner in which they handled Plaintiff that evening."

## CONCLUSIONS OF LAW

**A.     Standards for Motions for Summary Judgment**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if the moving party presents evidence that shows "that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 321, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). For a fact to be material, it must have the capacity to affect the outcome. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510 (1986).

**B.     Principles of Insurance Contract Interpretation**

The interpretation of an insurance policy, including the determination of whether the policy is ambiguous, is an issue of law for the court. *AIU Ins. Co. v. Superior Court*, 51 Cal.3d 807, 827-28, 274 Cal.Rptr. 820 (1990). Words in an insurance policy are interpreted according to the plain meaning a layman would ordinarily attach to them. *Reserve Ins. Co. v. Pisciotta*, 30 Cal.3d 800, 807, 180 Cal.Rptr. 628 (1982). "[I]f contractual language is clear and explicit, it governs." *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1264, 10 Cal.Rptr.2d 538 (1992).

An insurer has a duty to defend its insured if the underlying claim is potentially covered under the policy. *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 275, 54 Cal.Rptr. 112 (1966). "But where there is no possibility of coverage, there is no duty to defend." *Fire Ins. Exch. v Abbott*, 204 Cal.App.3d 1012, 1029, 25 Cal.Rptr. 620 (1988). The existence of a duty to defend turns on what facts are "known by the insurer at the inception of a third party lawsuit." *Saylin v. California Ins. Guar. Assn.*, 179 Cal.App.3d 256, 263, 224 Cal.Rptr. 493 (1986). The determination whether the insurer owes a duty to defend usually is made in the first instance by

comparing the allegations of the complaint with the terms of the policy. *Waller v. Truck Ins. Exchange*, 11 Cal.4th 1, 19, 44 Cal.Rptr.2d 370 (1995). The duty to defend is determined by the facts alleged in the underlying complaint and not by the legal theories pled against the insured. *Swain v. California Cas. Ins. Co.*, 99 Cal.App.4th 1, 8, 120 Cal.Rptr.2d 808 (2002).

**C.     The Assault or Battery Exclusion in the Burlington Policy**

The Assault or Battery exclusion in the Burlington policy is broadly written to bar coverage for any assault-or-battery-related claim that might be made against an insured. Under it, the policy does not apply to bodily injury "arising out of assault or battery, or out of any act or omission in connection with the prevention or suppression of an assault or battery." The court finds this language to be clear, explicit, and unambiguous.

It is well established that the exclusion's phrase "arising out of" is given a broad interpretation when used in an insurance policy. *Forecast Homes, Inc. v. Steadfast Ins. Co.*, 181 Cal.App.4th 1466, 1478-79, 105 Cal.Rptr.3d 200 (2010). Any "slight connection" or "incidental relationship" between the claimed injury and an assault or battery is enough to bar coverage. *Southgate Rec. & Park Dist. v. California Ass'n for Park & Rec. Ins.*, 106 Cal.App.4th 293, 301, 130 Cal.Rptr.2d 728 (2003).

The term "arising out of" in the assault or battery exclusion requires the court to examine the conduct underlying the lawsuit, instead of the legal theories attached to the conduct. *Century Transit Sys. v. American Empire Surplus Lines Ins. Co.*, 42 Cal.App.4th 121, 127 n.4, 49 Cal.Rptr.2d 567 (1996). It "expressly excludes coverage for '… *any claim … based on assault and battery* ….' *Id.* at 126 (emphasis in original). This language places the focus not upon an insured's conduct or intent, but rather upon the type of event in which a plaintiff has sustained an injury." *Id.* The exclusion also specifically bars claims arising out of "any act or omission in connection with the prevention or suppression of an assault

or battery." Martinez pled causes of action for negligent security, negligent hiring, negligent training, and negligent supervision of guards. All of these are clearly "omissions" in connection with the "prevention" of assaults or batteries. *Britamco Underwriters v. Olvera*, 1995 WL 84456 (N.D. Cal. 1995).

Separate claims for separate negligent acts cannot sidestep the exclusion. As in *Century Transit*, the alleged negligence claims were for injuries arising out of the alleged assault and battery. Thus, the insured "cannot rely upon the allegations of negligence to create a potential for coverage." *Century Transit,* 42 Cal.App.4th at 128 (emphasis added). *Swain*, 99 Cal.App.4th at 8 (claim for "negligence" adds nothing to a complaint where alleged facts raise no potential for covered liability).

In summary, the Assault or Battery Exclusion in the Burlington policy is broad in its scope and unambiguously precludes coverage for any bodily injuries that would not have happened but for an assault or battery by any person, or would not have happened but for an attempt to prevent or suppress an assault or a battery by any person.

**C.     Burlington Owed No Duty To Defend Its Insured**

Due to the Assault or Battery Exclusion, there was never a possibility of coverage for the complaint Mr. Martinez filed in state court. Mr. Martinez's pleading alleged multiple acts of assault and battery as well as attempts to prevent and/or suppress assaults or batteries. It specifically alleged that Mr. Martinez was "physically removed" from the dance floor then was "struck . . . on his torso, head and face with closed fists, feet and flashlight(s)." The police department's crime report, which was provided to Burlington, amplified Martinez's allegations, describing multiple acts of assault and battery and an ongoing struggle to try to prevent or suppress further assaults or batteries.

The First Amended Complaint, even if it had been given to Burlington, changed nothing as it made the same factual allegations. Its removal of the causes of action for assault and battery is immaterial as the same facts were alleged.

*Swain*, 99 Cal.App.4th at 8. And it continued to allege negligent security, negligent hiring and training, and negligent supervision of guards, each of which are "omissions" in connection with the "prevention" of assaults or batteries. *Britamco Underwriters v. Olvera*, 1995 WL 84456 (N.D. Cal. 1995).

Burlington owed no duty to defend.

**D.  Burlington Owed No Duty To Pay Judgment Creditor Martinez**

The duty to defend is broader than the duty to indemnify. Therefore, "a conclusion that [the insurer] did not have a duty to defend will be dispositive of [a] claim that [the insurer] had a duty to indemnify." *Delgado v. Interinsurance Exch. of Auto. Club*, 47 Cal.4th 302, 308 n.1, 211 P.3d 1083 (2009).

Burlington owed no duty to defend and thus, *a fortiori*, it owed no duty to indemnify. Further, a conclusion that the insurer had no duty to defend is dispositive of a claim of a judgment creditor under Insurance Code section 11580 (b)(2). Under that statute, an action by a judgment creditor of an insured against an insurance company is "on the policy and subject to its terms and limitations." *Delgado,* 47 Cal.4th at 308 n.1 (quoting Ins. Code §11580 (b)(2)). Accordingly, Burlington owes no duty to pay the claim of Mr. Martinez, the judgment creditor.

Martinez argues that the state trial court did not specifically find that an assault or a battery had occurred. Martinez ignores that the duty to defend turns on the facts known by the insurer at the inception of the lawsuit. *Saylin*, 179 Cal.App.3d at 263. Further, it was not essential to the state court judgment whether the injuries arose out of assault or battery, or out of any act or omission in connection with the prevention or suppression of an assault or battery. Still, the evidence admitted showed that the injuries arose from either an assault or battery, an act or omission in connection with the prevention or suppression of an assault or battery, or both.

**E.  Burlington Is Not Liable for Bad Faith**

Because Burlington did not owe a duty to defend or indemnify, it cannot be

liable for breach of the implied covenant of good faith and fair dealing. *Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025, 1034 (9th Cir. 2008). A bad faith claim cannot be maintained unless policy benefits are due under the policy. *Waller*, 11 Cal.4th at 36.

## IV. CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1. Judgment is entered in favor of plaintiff The Burlington Insurance Company and against defendant Rudy Martinez, Jr.

2. Declaratory judgment is entered in favor of Burlington and against Rudy Martinez, Jr. It is hereby declared and adjudged that the Assault or Battery exclusion in Burlington policy number 181BW09888 between Burlington and CHWC, Inc. dba Crazy Horse Restaurant bars all coverage and all potential coverage for the lawsuit in the California Superior Court for the County of Los Angeles captioned *Rudy Martinez Jr. v. CHWC, Inc. dba Crazy Horse Restaurant and Nightclub*, Case No. KC055423 H. It is further adjudged that Burlington had no duty to defend CHWC, Inc. in the *Martinez* action, has no duty to indemnify CHWC, Inc. for the judgment entered against it in that lawsuit, and has no duty under Insurance Code section 11580 to pay defendant Rudy Martinez, Jr. anything on the judgment entered therein.

3. The Counterclaim of Rudy Martinez, Jr. is dismissed as moot.

4. Costs are awarded to plaintiff.

Dated: January 20, 2012

_____
Hon. Manuel L. Real
United States District Judge